IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| SAMUEL RORIE;<br>JUSTIN BAKER<br><br>        Plaintiffs,<br>v.<br><br>WSP2, LLC;<br>JOSEPH CLAYTON SUTTLE<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case. No. 5:20-cv-5106-TLB<br>)<br>)<br>)<br>)<br>) |

**BRIEF IN SUPPORT OF RENEWED AND AMENDED MOTION FOR PARTIAL DISMISSAL**

Defendants WSP2, LLC and Joseph Suttle ("Defendants") come before this Court and for their Motion for Partial Dismissal state:

## I.     FACTUAL BACKGROUND

The Plaintiffs' First-Amended Complaint ("Complaint") makes the following factual allegations related to their work and compensation by WSP2, LLC:

> *"28. Plaintiffs and other Servers typically spent about 45 minutes opening the restaurant at the beginning of their shift. From approximately 10:15 am to 11:00 am each day that they worked, they wiped down tables, folded pizza boxes, rolled silverware, and performed other duties with no customers present.*
>
> *29. Plaintiffs and other Servers typically spent 30 minutes rolling silverware and polishing glasses at the end of their shift to help prepare for the evening shift. This was typically done between 1:30 pm and 3:30 pm—Plaintiffs and other Servers left earlier on days when the restaurant was overstaffed and stayed later on days when the restaurant was understaffed.*
>
> *30. Plaintiffs and other Servers sometimes performed the above-described tasks in the middle of their shifts too, if there was a lull in service or a need for certain supplies.*
>
> *31. Plaintiffs and other Servers typically worked 5 hours per day on average for Defendants from 10:15 a.m. until somewhere ranging from 2 p.m. to 4 p.m.*

> *32. At least 1 hours and 15 minutes and often more of each 5-hour shift worked by Plaintiffs and other Servers was spent performing the above-described non-tipped work.*
>
> *33. Therefore, non-tipped duties often occupied more than twenty percent of Plaintiffs' time and the time of other Servers."*

See Doc. No. 11, First Amended Complaint.

Based on the allegations, it appears that Plaintiffs attempt to assert a violation of the "dual jobs" regulation ("Dual Jobs Regulation" or the "Regulation"), a regulation promulgated by the Department of Labor in an effort to clarify the FLSA's "tipped employee" provision as applied to employees who work for an employer in two different jobs or occupations. Pursuant to the Dual Jobs Regulation, when an employee is employed in more than one occupation for the same employer, no tip credit may be taken for the hours the employee is engaged in a job wherein he does not customarily and regularly receive at least $30 a month in tips. *See* 49 U.S.C. § 203(t); 29 CFR § 531.56(e).

Importantly, the Plaintiffs do not allege these non-tipped tasks were unrelated to their jobs as servers. Nor do they allege that the non-tipped work occurred substantially outside the immediate period before and after their tipped work. In fact, according to the Complaint, the opposite is true: the 45-minute period before the restaurant opened and the 30 minute period at the end of the Plaintiffs' shift were the immediate periods before and after tipped work was performed, respectively. As Plaintiffs explain, this period was required to get the restaurant ready to service customers. Additional non-tipped tasks, identical to those laid out above, would also occur as necessary during the shift – *i.e.* contemporaneously with the tipped duties. They do not specify any facts substantiating a position that such work was not contemporaneous with or temporally proximate to tipped work, nor how any alleged work was unrelated to the tipped work.

## II.  ARGUMENT AND ANALYSIS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiffs must set forth factual allegations creating a "plausible" entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 557 (2007). While the pleading standard is liberal, a plaintiff must nonetheless "show at the pleading stage that success on the merits is more than a "sheer possibility."" *Vang v. PNC Mortg., Inc.*, 517 F. App'x 523, 525–26 (8th Cir. 2013) (citations omitted). "[A] formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Further, "a gallimaufry of labels, conclusions, formulaic recitations, naked assertions and the like will not pass muster." *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 934 (8th Cir. 2012). Rather, the nonmoving party must allege facts that, when "accepted as true, state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citations omitted).

The Plaintiffs' Complaint seeks recovery under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201 *et. seq.,* for alleged minimum wage violations. The Complaint, though, does not allege the Plaintiffs maintained dual jobs. Instead, the Plaintiffs allege each had non-tipped duties of his server position which, under former Department of Labor ("Agency") guidance, would cause the non-tipped duties to be compensable at the full minimum wage. Under the appropriate review, the Complaint fails to state a claim upon which relief can be granted.

The Minimum Wage Claims are based upon the premises that Defendants took advantage of the tip-credit for waitstaff during their performance of non-tipped work; that the non-tipped duties often occupied more than twenty percent of the Plaintiffs' time; and that some of the non-tipped work (cleaning, preparing the restaurant) was unrelated to the tipped work performed. *See* Doc. 11, at ¶¶ 28, 29, 30, 31, 32, 33. The Complaint makes no statement that the non-tipped duties were unrelated to their work, were performed more than occasionally or part of the time, or were not in close temporal proximity to the tipped duties any of which would establish a dual jobs and eliminate the tip-credit entitlement for the non-tipped occupation. The Complaint merits dismissal in that it does not plausibly allege that any Plaintiff maintained "dual jobs."

Whether the Dual Jobs Regulation is ambiguous, and if so, the level of deference to be given to the Agency's interpretation of it, should be determined under the principles set forth in *Kisor v. Wilkie*, 139 S.Ct. 2400 (2019).  While the Defendants do not believe the Regulation is ambiguous, even if it is, the Agency is entitled to deference under *Kisor.*  According to the Agency non-tipped duties must either be (1) unrelated to the tipped job, (2) related but performed separately, or (3) not temporally proximate to the tipped work before such work is ineligible for the tip-credit.  U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA 2018-27 (Nov. 8, 2018).

As discussed below, this guidance meets all factors to be considered under *Kisor* but even if the Agency is not entitled to deference under *Kisor*, then this Court should determine the Regulation's meaning independently, not based upon outdated Agency guidance and interpretations, which were, utilized in the past by the Eighth Circuit in *Fast v. Applebee's International*, 638 F.3d 872 (8th Cir. 2011) under principles established by *Auer v. Robbins*, 519 U.S. 452 (1997) and  then-current guidance.  That guidance is no longer in effect, nor was it supported by the text of the Regulation at issue at the time.  If the Court rejects the interpretation of the Dual Jobs Regulation and instead resorts to its own statutory reading of the Regulation (under *Kisor, supra*), it should find that the Regulation's the text does not proscribe any time threshold for determining whether non-tipped work falls into one of the aforementioned exceptions to the tip-credit. Instead, the key test as to whether one has dual jobs is clearly based on the relationship of an employee's duties to his job or the time the duties are performed.

Finally, because the Complaint's factual allegations for the FLSA and AMWA violations merely consist of conclusions of law, formulaic recitation of the elements, and vague time estimations establishing, if anything only a *de minimums* violation – without substantive factual allegations – the claims should be dismissed.

### A) The Dual Jobs Regulation is not ambiguous.

The Dual Jobs Regulation establishes that when an employee has two separate occupations within one organization, one tipped and one non-tipped, an employer violates FLSA by applying the tip-credit to the non-tipped occupation's hours. 29 CFR § 531.56(e) (distinguishing a maintenance man who is also employed as a server from a waitress who must help clean and roll silverware). Following the previous Department of Labor interpretation, the Eighth Circuit in *Fast v. Applebee's International*, 638 F.3d 872 (8th Cir. 2011), found the statute ambiguous as to the meaning of "occasionally" or "part of the time." Deferring to the Agency – as called for by the Supreme Court in *Auer v. Robbins* – the *Fast* court upheld the Agency's then guidance, which suggested utilizing an 80/20 time review to determine whether untipped tasks constituted a distinct occupation. *See Fast* at 879 *(citing Auer v. Robbins*, 519 U.S. 452 (1997)). If the employees spent more than twenty percent of their hours on related but untipped duties, then the employer was no longer entitled to a tip-credit for all the hours worked. *Id.* However, since *Fast v. Applebee's*, the Agency has clarified its interpretation of the Regulation AND the Supreme Court has substantially restricted the occasion wherein a court may seek to give deference to an Agency interpretation of its regulations. *See Kisor v. Wilkie*, 139 S.Ct. 2400, 2416-17 (2019); *see also Coates v. Dassault Falcon Jet Corp.*, 2020 WL 3067512, at *3 n.4 (8th Cir. 10 June 2020).

The Complaint fails to allege facts supporting a claim that the non-tipped work was so significant, unrelated or temporally separate from the tipped work so as to constitute a second job or occupation. Proper legal and statutory interpretation under *Kisor* requires determining a statutory ambiguity actually exists before anything else. Before applying any agency interpretation, old or new, the court must use its own statutory interpretation to determine whether an ambiguity exists. It does not.

Despite *Fast*, the lack of definition for the terms "part of the time" and "occasionally" does not make the statute ambiguous. The Regulation explicitly separates employees who work two

5

separate jobs, one non-tipped and one tipped, from one whose occupation is primarily tip-generating but perform non-tipped tasks.  29 CFR § 531.56(e).  The Regulation explicitly separates a worker who is both a maintenance man and a server for the same organization from a waitress who must also clean the tables.  29 CFR § 531.56(e).  For the hours performing tasks as a maintenance man, a non-tipped occupation wholly separate from their work as a server, the employer cannot take a tip credit. 29 CFR § 531.56(e).  The employer can only take a tip credit on the hours the employee works as a server.  29 CFR § 531.56(e).  To separate the occupations, the Regulation focuses on tipped and non-tipped duties' relations. The revised guidance recognizes the flaw in the prior agency position in focusing on some time threshold.  *See* Opinion Letter FLSA 2018-27, p. 3 (Nov. 8, 2018) ["We do not intend to place a limitation on the amount of duties related to a tip-production occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties and all other requirements of the Act are met."]

The "waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes" does not have two occupations.  29 CFR § 531.56(e).  Because of the high relation between the waitress' tip-generating duties and non-tip generating duties (necessary to continue her tip-generating duties), she only had one job making it entirely entitled to a tip-credit. However, as the regulation example sets forth, there is no relation between a maintenance man and a server's duties, that such an employee has two jobs with only one entitled to a tip-credit.  By explicitly separating a maintenance man who is also employed as a server from a waitress who perform non-tip generating tasks, the Regulation is not ambiguous. The undefined terms are meant to convey that the waitress's job is, in addition to serving customers, to prepare and maintain the restaurant's serviceability.  The terms, though undefined, merely indicate that, unlike the maintenance man-server, the waitress spends the majority of her job serving customers only to stop when necessary to make the restaurant able to serve.  Because the terms are used to elaborate an example and not a definition, the example's logic writ large

6

holds without the terms' definitions – two occupations occur when the employee must complete two unrelated tasks. Thus, there is no time limit, as read in *Fast* and the Department of Labor's former interpretation, only the relation between the duties determines whether a person has two jobs. When two duties are unrelated, like maintenance work and waiting tables, then the person has two jobs and the employer cannot fully apply the tip credit. This, alone, should end the evaluation since there is no ambiguity. Since the Plaintiffs only alleged related duties, their claims should be dismissed.

**B) If the Dual Jobs Regulation is ambiguous, the current Agency interpretation should receive *Kisor* deference and require either unrelated duties or temporally disconnected performance of related duties to establish that an employee is employed in dual jobs.**

After *Kisor*, before granting deference to an agency's interpretation, a court must use all statutory interpretation techniques available to determine first an ambiguity exists in the statute; second, determine the agency's interpretation is the agency's official position; third, determine the interpretation implicates the agency's "substantive expertise;" and fourth, determine the interpretation reflects a fair and considered judgment. *See Kisor* at 2416-17. Once deference is granted, the agency's interpretation is controlling unless it is plainly erroneous or inconsistent with the Regulation. *Fast* at 878 (citing and explaining *Auer v. Robbins*, 519 U.S. 452 (1997)). However, a court should decline to defer, for example, to a merely "`convenient litigating position,'" *Kisor* at 2406 (*citing Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155, 132 S.Ct. 2156, 18)., It may also decline to defer when a new interpretation that creates "unfair surprise" to regulated parties, *Id.* The Guidance, adopting a 2009 Opinion Letter (*U.S. Dep't of Labor, Wage & Hour Div.* Opinion Letter FLSA 2009-23) which had been pulled for further consideration, should not constitute "unfair surprise." Nor does it amount to the Agency taking a "convenient litigating position." Should the Court find the Regulation ambiguous, it should grant the Agency's guidance *Kisor* deference. Simply because the November 2018 letter rescinds the longstanding, agency

7

created, 80/20 rule, and replaces it with an interpretation that does not place a specific time limit on non-tip generating tasks, does not mean the interpretation should be disregarded.

Even If *Auer* (or *Kisor*) deference is deemed not to apply, the courts should look to apply *Skidmore* deference to an agency's interpretation of its own regulations. *Id.* *Skidmore* deference grants the agency's interpretation persuasive power depending on "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift*, 323 U.S. 134 (1944).

Before 2018, the Department of Labor interpreted the Dual Jobs Regulation as setting a temporal limit on how much time an employee can spend on related, non-tipped duties while remaining a tipped employee – and courts adopted that approach under *Auer*. *See Fast*, 638 at 877. The Courts have read the Regulation as ambiguous since an example used the undefined terms "part of the time" and "occasionally." *See Id.* In November 2018, however, the Department of Labor issued an opinion letter interpreting 29 U.S. Code §203(t) and 29 CFR § 531.56(e) as not placing a limit on "the amount of duties related to tip-producing occupation that may be performed" so long as such related duties were performed "contemporaneously" or within "a reasonable time" before or after "direct-service duties" and defined related duties as those described by O*NET. *U.S. Dep't of Labor, Wage & Hour Div.*, Opinion Letter FLSA 2018-27 (Nov. 8, 2018). According to O*NET the related duties for waiters and waitresses include preparing tables, performing cleaning duties, rolling silverware, and setting up dining areas for the next shift. O*NET, "Summary Report for: 35-3051.00 – Waiters and Waitresses," https://www.onetonline.org/link/summary/35-3031.00 (last visited 07/22/2020). Further, the interpretation is set to become a regulation. *See Tip Regulations Under the Fair Labor Standards Act (FLSA)*, 84 Fed. Reg. 53956 (8 October 2019).

Admittedly, in *Esry & Foster v. OTB Acquisition, LLC*, the Eastern District of Arkansas elected not to give the interpretation deference following the logic in *Berger v. Perry's*

8

*Steakhouse of Illinois, LLC*, 430 F.Supp.3d 397 (N.D. Ill. 2019). *See Esry & Foster v. OTB Acquisition, LLC*, 2020 WL 3269003). *Berger* decided not to give the interpretation *Auer* deference since the 2018 interpretation caused "an unfair surprise" and its failure to clarify the perceived limit on related, untipped work. 430 F.Supp.3d at 411-12 (discussing how the interpretation does not fit with the prior 30 years' interpretation). Further, the court declined to give *Skidmore* deference because the interpretation was contrary to the way the statute's "plain language" had been read for the last 30 years and, therefore, had to be not thoroughly examined or consistent. *Id.*

*Esry and Berger* were mistaken to refuse deference to the current guidance, instead adopting outdated guidance on their own. The 80/20 rule is not the standard for determining whether the Dual Jobs Regulation applies – though both Courts adopted in some part because of its past application under Guidance. This Court should more strongly weigh the Agency's post-November 2018 rule examining whether the tasks are related to the tip-generating duties and are performed at a substantially similar time. Thus, to the extent it is ambiguous, the interpretation deserves more deference than the old in that it is the current agency interpretation, and in that it is logically connected to the Regulation's actual text. Finally, the interpretation both uses the Agency's substantive expertise and applies fair and reasoned judgment allowing deference under *Kisor*.

Using the maintenance man-server example, the employee who is either scheduled to work in maintenance some shifts and as a waiter others or must stop acting as a server during their shift to fix an air conditioner is different from a pizza restaurant server who must stop serving a table to fold a pizza box for a customer's to-go order or a server who must help prepare the restaurant for service. In the first instance, the maintenance man-server has to stop their job to perform a task wholly unrelated to their tip-generating occupation. Conversely, the server folding pizza boxes and preparing the restaurant only enables their tip-generating occupation, ensuring a customer can take the restaurant's product and the restaurant can serve customers.

Contrary to the Court's holding in *Berger*, the regulation should not have caused an "unfair surprise" to the regulated parties nor is it inconsistent with all past interpretations. Though it does instigate a shift in the court's regulation interpretation. The 2018 letter adopting the interpretation copied and reapplied, verbatim, an interpretation from 2009. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA 2018-27 (Nov. 8, 2018). The interpretation was then issued and adopted in the Field Handbook the next year and is set to become fully incorporated into the regulation. *See Tip Regulations Under the Fair Labor Standards Act (FLSA)*, 84 Fed. Reg. 53956 (8 October 2019). Thus, because it comports with the statutory language – as discussed in the prior section – and is consistent with prior interpretations, the interpretation merits at least *Skidmore* deference. The interpretation was adopted twice by the Department of Labor, first in 2018 in the Opinion letter and again in its 2019 handbook and will likely be adopted a third time by way of new regulation. *Id.* At some point, an interpretation is no longer a surprise. An interpretation in effect for over one year cannot be said to create a surprise, let alone an unfair one. Instead, this court should use the logic from *Shaffer v. Perry's Restaurant's, Ltd.*, 2019 WL 20198115 (W.D. Tex. 2019) granting deference to the interpretation to clarify and remove any of the regulation's ambiguity.

Because the interpretation more directly applies to anticipated employment situations and retains the logic of the Regulation, it reflects the Department of Labor's substantive judgment – assessing how labor laws effect employers and employees – and reflects fair judgment infollowing the statutory logic. Thus, the interpretation, if the statute is ambiguous, deserves deference for setting a clear standard – relation of duty and temporal proximity to determine if the same job – for employers of an otherwise ambiguous statute by the agency responsible for enforcement.

    **C) If *Kisor* deference is not warranted, the Court should not default to past Agency Guidance but should instead determine that the Regulation does not proscribe any limit on related non-tipped duties for employees paid by the tip-credit.**

Should the Court, under *Kisor*, not be inclined to give the Agency deference based on its 2018 guidance, the challenge then becomes how to define or interpret the Dual Jobs Regulation

without providing the Agency any deference (as the Court did in *Fast* under *Auer*). The solution should not be to re-apply an outdated interpretation of the Dual Jobs Regulation simply because *Fast* relied upon it (when it was current) as the Eastern District of Arkansas recently did. *See, e.g. Esry & Foster, supra.* The solution should instead be to follow *Kisor* and use the tools of statutory interpretation to judicially establish what the Regulation means as is explained above.

In the Complaint, Plaintiffs' only allege that they spent some of their time immediately before, after, or during their tip-generating tasks cleaning and preparing the restaurant for customer service. These tasks included cleaning the restaurant, folding pizza boxes, and preparing the restaurant for service and were performed before the restaurant opened, after it closed, and during the employees' shifts. *See* Doc. 11 at ¶¶ 28, 29, 30, 31, 32, 33. Because the tasks were performed occasionally and part of the time (according to the Complaint), and because those tasks required of Plaintiffs' are directly related to a server's duties, Plaintiffs were clearly not performing dual jobs. Accordingly, the claims related to alleged misapplication of the tip credit should be dismissed.

Notably, this would separate the Western District and Eastern District of Arkansas's interpretations of the Regulation. However, even Judge Price Marshall noted in *Esry* in refusing the Agency guidance that the interpretation is pending regulatory adoption which would require the Eastern District to follow it. Instead of causing a split, then, a fresh interpretation of the Dual Jobs Regulation, unconstrained by any Agency deference at all, is warranted. Reading the text of the Regulation, there can be no dispute that the Plaintiffs under the facts as pled did not maintain dual jobs. Thus, the inquiry should end there.

Because Plaintiffs solely allege working on related duties part of their time compared to their tip-generating duties, the Complaint does not a plausible tip-credit violation and should be dismissed.

**D)     The Dual Jobs Claims fails to sufficiently allege facts plausibly establishing the Plaintiffs were employed in dual occupations because any non-tipped duty performance over the former twenty-percent threshold is, on the face of the Complaint, alleged to be merely *de minimis*.**

The Minimum Wage Claims are based upon the premise the Defendants took advantage of the tip-credit for waitstaff during their performance of non-tipped work; the non-tipped duties often occupied more than twenty percent of the Plaintiffs' time, and some of the non-tipped work (cleaning, preparing the restaurant) was unrelated to the tipped work performed. *See* Doc. 11, Complaint at ¶¶ 28, 29, 30, 31, 32, 33. The Plaintiffs fail to allege, however, any time performing non-tipped duties over twenty percent of their scheduled work time was more than *de minimis*.

"Employers are not required to pay employees for 'insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll.'" *Lyons v. Conagra Foods Packaged Foods, LLC*, 899 F.3d 567, 584 (8th Cir. 2018) (quoting 29 CFR § 785.47). Though generally a fact-based test, generally daily periods of approximately ten minutes does not pass beyond the *de minimis* threshold. *See id*. (citing *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984)).

Here, even under the old twenty-percent interpretation, Plaintiffs' claim would still be dismissed. Plaintiffs estimate they would regularly work five to nearly six hour shifts, one hour and fifteen minutes (1.25 hours) of which would be on tasks such as cleaning, folding pizza boxes, rolling silverware to prepare the restaurant for lunch and dinner services. *See* Doc. 11, at ¶¶ 28, 29, 30, 31, 32, 33. This hour and fifteen minutes, representing nearly exactly twenty percent of Plaintiffs' total working time is *de minimis* when considering the threshold that must be met to establish a dual job under the former guidance.

Because the Complaint only, at best, alleges a *de minimis* amount of non-tipped duty time over the allotted twenty percent for the tip-credit to apply, the Complaint fails to state a claim for a tip credit violation and should be dismissed.

### III.     CONCLUSION

The First Amended Complaint's claims alleging that the servers maintained dual jobs and that the tip-credit was therefore misapplied must be dismissed because its factual allegations fail to plausibly establish those claims.

        Respectfully Submitted,

        WSP2, LLC and Joseph Suttle, Defendants

        BY:  /s/George M. Rozzell IV
        George M. Rozzell IV AR Bar No. 2008032
        Miller | Butler | Schneider | Pawlik | Rozzell
        112 W. Center St., Fayetteville AR 72701
        224 S. 2nd St., Rogers, AR 72756
        T: 479.621.0006
        F: 479.631.6890
        grozzell@arkattorneys.com

### CERTIFICATE OF SERVICE

I, George Rozzell, hereby certify that on this 24th day of July 2020, I caused the foregoing filing to be delivered to each Plaintiff of record through its designated counsel through the Court's electronic filing system.

        BY:  /s/George M. Rozzell IV
          George M. Rozzell IV