IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SAMUEL RORIE and JUSTIN BAKER,
Each Individually and on Behalf of All
Others Similarly Situated                                                PLAINTIFFS

V.                          CASE NO. 5:20-CV-5106

WSP2, LLC and
JOSEPH CLAYTON SUTTLE                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Partial Dismissal (Doc. 12).[1] After the Motion was fully briefed, the Court held a telephonic hearing on August 18, 2020, at which time counsel were afforded the opportunity to present oral argument. Following that, the Court **DENIED** the Motion from the bench. This Order explains in detail the Court's reasons for denying the Motion. To the extent anything in this Order conflicts with statements made from the bench, this Order will control.

### I. BACKGROUND

This lawsuit was originally filed on June 17, 2020, by Plaintiffs Samuel Rorie and Justin Baker, who describe themselves as former servers who worked at a restaurant called Wood Stone Craft Pizza, which was owned and operated jointly by Defendants WSP2, LLC, and Joseph Clayton Suttle. Mr. Rorie and Mr. Baker were employed from January of 2018 until June of 2020. They bring claims on their own behalf and on behalf of a class of other servers who are similarly situated. The pending Motion concerns the

---

[1] Defendants filed an Answer to the Amended Complaint on the same day they filed their Motion for Partial Dismissal; however, it appears that the Motion for Partial Dismissal was filed first (by approximately 40 minutes) and will therefore be considered under Federal Rule of Civil Procedure 12(b) rather than 12(c).

1

viability of their claims for minimum wage compensation under the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA").

According to the Amended Complaint (Doc. 11), Mr. Rorie, Mr. Baker, and the other servers were paid an hourly "tipped rate," which is lower than the minimum wage, plus the tips they earned. Under both the FLSA and the AMWA, an employer may take a "tip credit" by paying tipped employees a lower tipped hourly rate instead of the minimum wage. 29 U.S.C. § 203(m); Ark. Code Ann. § 11-4-212. For example, in Arkansas in 2020, the minimum wage was $10.00 per hour. An Arkansas employer may pay a server as little as $2.63 per hour and then take a tip credit of up to $7.37 per hour—which is composed of the server's tips. However, if the server does not earn sufficient tips to cover some or all of this tip credit, the employer must pay the difference so that the server receives at least the hourly minimum wage. *See* 29 U.S.C. § 203(m)(2)(A); Ark. Code Ann. § 11-4-212(a).[2]

An employer may still take advantage of the tip credit even when its tipped employees perform some non-tip-generating tasks during their shifts. For example, Mr. Rorie and Mr. Baker allege that they and their fellow servers were required to perform some non-tip-generating tasks during their shifts, including opening or closing the restaurant, rolling silverware, wiping down tables, cleaning glassware, and folding pizza boxes. They performed this work at the beginning of their shifts before customers entered the store, during their shifts when there was a lull in service or a need for supplies, and after their shifts to help prepare for the next shift. They claim that they typically worked

---

[2] It bears mentioning here that not all states offer employees a minimum wage that is higher than the federal government's, nor do all states permit employers to take tip credits.

five hours per day, and "at least" one hour and fifteen minutes (or at least 20%) of that five-hour shift occupied non-tipped duties. (Doc. 11 ¶¶ 31, 32). They believe that Defendants wrongly paid them at the lower tipped rate (and took a tip credit) for this non-tip-generating work.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must provide "a short and plain statement of the claim that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of a complaint's factual allegations as true and construe them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

## III. DISCUSSION

In 1967, the Department of Labor ("DOL") promulgated a regulation, now codified at 29 C.F.R. § 531.56(e), that was meant to clarify when a worker would and would not qualify as a "tipped employee" under 29 U.S.C. § 203(m). *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 878 (8th Cir. 2011) (explaining the legislative history). The new regulation was titled "Dual Jobs," and it set the ground rules concerning when employers were permitted to pay their employees at the tipped rate for non-tip-generating work. The regulation begins by explaining:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with

3

> respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man.

However, the regulation goes on to distinguish the maintenance man/waiter example

> from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

*Id.*

This "Dual Jobs Regulation," as it came to be known, draws a distinction between an employee who has two different occupations—one that generates tips and one that does not—and an employee who has only one tipped occupation but also performs "related duties" that do not produce tips. The employee with two occupations should not be paid at the tipped rate for the non-tip-generating job; but the employee with one tipped occupation who performs some non-tipped but related duties may still be paid at the tipped rate for all work performed.

Unfortunately, the Dual Jobs Regulation generated tremendous uncertainty, mainly because it included the terms "part of [the] time" and "occasionally." These temporal qualifiers seemed to imply that there was an upper limit to the number of "related duties" that a tipped employee could perform while still being paid at the tipped rate. The question was: What might the upper limit be? And how would it be measured?

In 1988, the DOL made an attempt to clarify the confusion by issuing a Field Operations Handbook ("FOH") that stated: "[W]here the facts indicate that . . . tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit can be taken for the time spent in

4

such duties." U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook at § 30d00(e) (Dec. 9, 1988). Soon after, district courts began recognizing this statement in the 1988 FOH as the "80/20 Rule." For approximately the next thirty years, courts interpreted and applied the 80/20 Rule to mean that employers could reasonably take a tip credit on their tipped employees' wages provided that the employees spent not more than 20% of their shifts performing non-tipped work; but if the non-tipped, though related, tasks rose above the 20% threshold, employers would be required to pay the full minimum wage to those tipped employees.

In 2011, the Eighth Circuit in *Fast v. Applebee's International, Inc.*, explicitly gave deference to the DOL's 1988 FOH, noting, "The 20 percent threshold used by the DOL in its Handbook is not inconsistent with § 531.56(e) and is a reasonable interpretation of the terms 'part of [the] time' and 'occasionally' used in that regulation." 638 F.3d at 881. The *Fast* Court ultimately afforded so-called *Auer* deference—from the Supreme Court's decision in *Auer v. Robbins*, 519 U.S. 452 (1997)—to the DOL's interpretation of the ambiguous Dual Jobs Regulation. The Court explained that "[t]hese types of agency interpretations (opinion letters and handbooks) of its own regulation are not entitled to *Chevron* deference because they are not subject to notice and comment rule making procedures." *Fast*, 638 F.3d at 878. However, when an agency identifies an ambiguous regulation—like the Dual Jobs Regulation—and seeks to clarify it, the agency's interpretation "is therefore 'controlling unless plainly erroneous or inconsistent with the regulation.'" *Id.* at 879 (quoting *Auer*, 519 U.S. at 461).

As time marched on, courts throughout the country applied the straightforward 80/20 Rule with no apparent confusion, until November 8, 2018, when the DOL issued an

5

Opinion Letter that purported to "clarify our Field Operations Handbook (FOH) section 30d00(e)." Opinion Letter FLSA 2018-27, 2018 WL 5921455 (Dep't of Labor, Wage & Hour Div. Nov. 8, 2018). The Opinion Letter explained that in the agency's view, its longstanding interpretation of the Dual Jobs Regulation had nonetheless "resulted in some confusion and inconsistent application." *Id.* To remedy this, the agency offered the following new interpretation—which rejected the 80/20 Rule and stated that there was now *no upper limit* on the number of "related duties" a tipped employee could perform while being paid a tipped hourly rate:

> We do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties and all other requirements of the Act are met. We also believe that guidance is necessary for an employer to determine on the front end which duties are related and unrelated to a tip-producing occupation so that it can take necessary steps to comply with the Act. Accordingly, we believe that the determination that a particular duty is part of a tipped occupation should be made based on the following principles:
>
>> • Duties listed as core or supplemental for the appropriate tip-producing occupation in the in the Tasks section of the Details report in the Occupational Information Network (O*NET) http://online.onetcenter.org or 29 C.F.R. § 531.56(e) shall be considered directly related to the tip-producing duties of that occupation. *No limitation shall be placed on the amount of these duties that may be performed, whether or not they involve direct customer service, as long as they are performed contemporaneously with the duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties.*
>
> . . . .
>
> These principles supersede our statements in FOH § 30d00(e). A revised FOH statement will be forthcoming.

(emphasis added). As promised, in February of 2019, the DOL issued a revised FOH that explained its new view that the Dual Jobs Regulation "permits the employer to take a tip credit for any time the employee spends in duties related to the tipped occupation,

6

even though such duties are not themselves directed toward producing tips." Field Operations Handbook § 30d00(f)(2).

Since then, multiple district courts have been asked to weigh in on whether the new Opinion Letter and revised FOH should be granted deference. With one lone exception, all courts that have examined the issue have declined to extend the agency's new guidance any deference at all. *See, e.g., Esry v. OTB Acquisition LLC*, 2020 WL 3269003, at *1 (E.D. Ark. June 17, 2020) ("[T]he new interpretation is inconsistent with the Dual Jobs regulation and *Fast*, and it therefore doesn't merit either *Auer* or *Skidmore* deference."); *Berger v. Perry's Steakhouse of Ill., LLC*, 430 F. Supp. 3d 397, 412 (N.D. Ill. 2019) (declining to afford *Auer* deference to the 2018 Opinion Letter, finding that "the DOL's new interpretation runs contrary to the remedial purpose of the FLSA—to ensure a fair minimum wage"); *Flores v. HMS Host Corp.*, 2019 WL 5454647, at *5 (D. Md. Oct. 23, 2019) ("If . . . no quantitative limits exist on an employer's imposition of "related" but untipped duties, then employees could be deprived of the regular minimum wage even if only a fraction of the employee duties were tipped."); *Esry v. P.F. Chang's China Bistro, Inc.*, 373 F. Supp. 3d 1205, 1210 (E.D. Ark. 2019) ("[E]ven if the Department's Handbook had long been in its current form, the Court would not defer to it. *Auer* deference is undoubtedly inappropriate when the agency's interpretation of its own ambiguous regulation is plainly erroneous or inconsistent with the regulation."); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976, 986 (W.D. Mo. Jan. 2, 2019) (finding the Opinion Letter "currently unworthy of *Auer* deference" because it "directly conflicts with its prior guidance"); *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552 (W.D. Va. 2019) (noting that "significant signs" indicate that DOL's new interpretation does not "reflect the

agency's fair and considered judgment on the matter in question" because it "reverses 30-year-old agency policy," "coincided with a change in administration," and "contradicts the regulation as it plainly reads"); *Belt v. P.F. Chang's China Bistro, Inc.*, 401 F. Supp. 3d 512, 533 (E.D. Pa. 2019) ("An interpretation proclaiming that there is *no* limit on the amount of related and untipped work directly contradicts the temporal language in the Dual Jobs regulation, and is unreasonable.").

The Court has reviewed the considered opinions of the district courts cited above and agrees with their analysis.[3] In particular, Judge D.P. Marshall of the United States District Court for the Eastern District of Arkansas noted that the Dual Jobs Regulation clearly "sets an upper limit on how much time an employee can spend on related, untipped duties while remaining a tipped employee for all hours worked." *OTB Acquisition*, 2020 WL 3269003, at *1. Since the Regulation was ambiguous about "where to set that limit," the DOL promulgated the 80/20 Rule as "a reasonable solution to that ambiguity." *Id.* Now that the DOL has reversed course, the new guidance is inconsistent with the temporal language of the Dual Jobs Regulation and the Eighth Circuit's reasoning in *Fast*. Accordingly, there is no reason why this new guidance should merit judicial deference.[4]

---

[3] The only district court opinion that afforded *Auer* deference to the agency's new guidance is *Shaffer v. Perry's Restaurants, Ltd.*, 2019 WL 2098116 (W.D. Tex. Apr. 24, 2019). Interestingly, though, the opinion can best be described as a cursory one that adopts a magistrate judge's report and recommendation that drew no objection from either side. The Court contrasts this opinion with the more fulsome analysis of the other district courts that have examined the new guidance and rejected it as contrary to the plain language of the underlying regulation.

[4] Moreover, as Judge Stephen R. Bough of the United States District Court for the Western District of Missouri pointed out, the DOL's abandonment of the 80/20 Rule is particularly striking given the fact that the agency continually "reaffirmed its 80/20 rule interpretation" over the past decade through the "submission of amicus briefs before the Eighth Circuit Court of Appeals, the Ninth Circuit Court of Appeals, and the Tenth Circuit Court of Appeals, and the republishing of its interpretation in the 2016 edits to the FOH."

8

The Court also agrees with Judge Marshall that the 80/20 Rule is "no longer binding" because the 1988 FOH on which it was based was revised to eliminate it; however, the 80/20 Rule still remains "a reasonable interpretation of the Dual Jobs regulation" in the absence of any other reasonable guidance or official regulation. *Id.*

For all of these reasons and those stated from the bench, the Court declines to afford judicial deference to the Department of Labor's 2018 Opinion Letter/2019 Revised Field Operations Handbook and will instead apply the substance of the 80/20 Rule in resolving the parties' wage and hour dispute in the case at bar.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Dismissal (Doc. 12) is **DENIED**.

**IT IS SO ORDERED** on this ___9th___ day of September, 2020.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

*Cope*, 354 F. Supp. 3d at 986 (citing *Fast*, 638 F.3d at 877; *Marsh v. J. Alexander's, LLC*, 905 F.3d 610, 626 (9th Cir. 2018); and *Romero v. Top-Tier Colorado, LLC*, 849 F.3d 1281, 1282 (10th Cir. 2017)).