IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SAMUEL RORIE and JUSTIN BAKER,
Each Individually and on Behalf of All
Others Similarly Situated                                          **PLAINTIFFS**

V.                                    **CASE NO. 5:20-CV-5106**

WSP2, LLC and
JOSEPH CLAYTON SUTTLE                                          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Motion for Conditional Certification of Collective

Action, for Approval and Distribution of Notice, and for Disclosure of Contact Information

(Doc. 27) and Brief in Support (Doc. 28); Defendants' Response in Opposition (Doc. 29);

and Plaintiffs' Reply (Doc. 32).  For the reasons below, Plaintiffs' Motion (Doc. 27) is

**GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Plaintiffs Samuel Rorie and Justin Baker, on behalf of themselves and others

similarly situated, move the Court for conditional certification of a collective action

pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  The FLSA is a

federal statute governing minimum wages, maximum hours worked, and overtime

compensation.  The statute allows an action to be brought "by any one or more employees

for and in behalf of himself or themselves and other employees similarly situated."  29

U.S.C. § 216(b).  This type of lawsuit requires that each potential plaintiff "opt in," or "give

his consent in writing to become such a party" to a collective claim for unpaid wages.  *Id.*

The Amended Complaint alleges that Mr. Rorie and Mr. Baker are former servers

who were employed by Defendants WSP2, LLC, and Joseph Clayton Suttle at a

1

restaurant called Woodstone Pizza in Fayetteville, Arkansas, from approximately January 2018 to June 2020. WSP2, LLC operates one Woodstone Pizza location described by the parties as the "uptown" location. There is also a "downtown" location, but it is not owned by WSP2, LLC. The Amended Complaint does not contain any facts to indicate that separate Defendant Suttle is an employer (for FLSA purposes) at both the "uptown" and "downtown" locations of Woodstone Pizza. Instead, the Amended Complaint describes Mr. Suttle *only* in relation to his role "as an operating employer of WSP2"— which the parties agree owns *only* the "uptown" location. (Doc. 11, p. 3).[1]

According to the affidavits submitted by Mr. Rorie and Mr. Baker in support of the Motion for Conditional Certification, Mr. Rorie worked at the "uptown" location, and Mr. Baker worked at both the "uptown" and "downtown" locations of Woodstone Pizza. *See* Docs. 27-7, p. 1; 27-8, p. 1. Both Plaintiffs contend that the Defendants violated the FLSA by failing to pay them and their fellow servers appropriate minimum wages. In particular, Plaintiffs claim the servers were not adequately paid for the time they spent performing non-tipped work. They also claim the Defendants improperly pooled and then withheld the servers' tips. They ask the Court to conditionally certify an FLSA class of "[a]ll servers employed by WSP2, LLC and Joseph Clayton Suttle, d/b/a Woodstone Pizza, at any time since June 17, 2017." (Doc. 27-1, Proposed Notice).

---

[1] At the Case Management Hearing on August 18, 2020, the Court inquired of Defendants' counsel whether WSP2, LLC was "just one restaurant," and counsel responded, "Yes, Your Honor. It's the restaurant on the north side of town"—in other words, the "uptown" location. Then, when the Court asked Plaintiffs' counsel whether he believed discovery should be bifurcated in this case, he said, "No, Your Honor. *And especially not where we will be moving for class [certification] at just this one location.*"

Given that Plaintiffs' counsel previously represented to the Court that he would only be seeking conditional certification of a class of current or former servers at the "uptown" location owned by WSP2, LLC, the Court was surprised to learn for the first time in the brief in support of conditional certification that Plaintiffs now claim they "represent a class of employees who worked as servers for Defendants *at two restaurants* during the relevant period." (Doc. 28, p. 8) (emphasis added). The Amended Complaint did not give clear notice to the Defendants that collective claims were being asserted on behalf of servers at both the "uptown" location owned by WSP2, LLC, and the "downtown" location not owned by WSP2, LLC. Further, since Plaintiffs' counsel confirmed during the Case Management Hearing that class certification would be sought as to "just . . . one location," it seems likely that Defendants were lulled into believing that Plaintiffs' motion for conditional certification would be limited to a class of servers working at the "uptown" location. Plaintiffs' reply brief, however, argues that the "downtown" location's servers should also be included in the class because Mr. Suttle "owns both the downtown and uptown locations," (Doc. 32, p. 2)—a fact that was never alleged in the Amended Complaint.

After considering the above facts and the parties' arguments, the Court is not inclined to conditionally certify a collective action that includes servers from both Woodstone Pizza locations. The owner of the "downtown" location is not named in the lawsuit. Moreover, the Amended Complaint explains that Mr. Suttle is only liable as an employer due to his role as owner and operator of WSP2, LLC—and no other entity. *See, e.g.*, Doc. 11, pp. 3–4 (describing Mr. Suttle's "role as an operating employer of WSP2" and his position as "a principal, director, officer, and/or owner of WSP2" and claiming,

therefore, that  he is "the employer of Plaintiffs and the collective"). Accordingly, the Court finds that any collective action that is conditionally certified will be limited to those servers who worked at the "uptown" location of Woodstone Pizza during the relevant time period.

Defendants offer two substantive objections to Plaintiffs' Motion for Conditional Certification.  First, they argue that Plaintiffs have not sufficiently established that other individuals may be interested in joining the collective action.  Second, they argue that one aspect of Plaintiffs' claim for unpaid minimum wages is without legal basis.  They encourage the Court to "take this opportunity" to not only review the conditional certification motion, but also "review the facts of the allegations related to tip pooling, and recognizing that the practices complained of are permitted by 29 U.S.C. § 203(m)(2), not permit any notice to any putative plaintiff to reference any allegation of unlawful tip pooling." (Doc. 29, pp. 1–2). In addition, Defendants object to the proposed form of the notice and consent documents.  Below, the Court will address the legal standard that applies when evaluating a motion for conditional certification and then consider Defendants' objections to conditional certification and to the form of the notice and consent documents.

## II.  LEGAL STANDARD

The Eighth Circuit has not yet announced standards that district courts must use in evaluating collective actions pursuant to the FLSA.  *Resendiz-Ramirez v. P&H Forestry, LLC*, 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007).  In the absence of such guidance, numerous district courts in this Circuit, including this Court, have approved of the procedures announced in the Fifth Circuit case of *Mooney v. Aramco Services Co.*, which establishes a two-step process for certifying a collective action.  4 F.3d 1207, 1212

4

ipt

fort

edoubt

duplicate

Case 5:20-cv-05106-TLB   Document 33   Filed 10/19/20   Page 5 of 14 PageID #: 263

(5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Aaron v. Summit Health and Rehab., LLC*, 2014 WL 1095829, at *2 (W.D. Ark. Mar. 19, 2014) (citing *Mooney* for the prevailing approach used by federal courts in certifying collective actions); *Garrison v. ConAgra Packaged Foods, LLC*, 2013 WL 1247649, at *1 (E.D. Ark. Mar. 27, 2013) (same); *Shackleford v. Cargill Meat Sols. Corp.*, 2013 WL 209052, at *1 (W.D. Mo. Jan. 17, 2013) (same); *Burch v. Qwest Commc'ns Int'l, Inc.*, 677 F. Supp. 2d 1101, 1114 (D. Minn. 2009) (same).

The two-step process described in *Mooney* involves a progressively more rigorous analysis as to whether a putative class of plaintiffs is "similarly situated," as described in § 216(b) of the FLSA, and is thus suited for the collective action model as a means of efficiently litigating their claims. *Mooney* labels the first step in the inquiry as the "notice stage" and the second step as the "decertification stage," as follows:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the Court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

54 F.3d at 1213–14.

Plaintiffs' Motion for Conditional Certification now comes before the Court at the preliminary "notice stage." Accordingly, the Court is tasked with the job of identifying whether, prior to taking discovery in the case and after considering only the pleadings and affidavits, conditional certification of a class of similarly situated employees is appropriate. Courts have acknowledged that "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees . . . ." *Id.* At the notice stage, a plaintiff must only make "a modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy or plan that violated the law." *Garrison*, 2013 WL 1247649, at *2. While the burden of proof borne by the plaintiffs at this stage is relatively low, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Jost v. Commonwealth Land Title Ins. Co.*, 2009 WL 211943, at *2 (E.D. Mo. Jan. 27, 2009) (quoting *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)).

The inquiry is made somewhat complicated by the fact that the term "similarly situated" is not defined in the FLSA. District courts in this Circuit have therefore considered a variety of factors—no single one of which is dispositive—in determining whether plaintiffs and proposed class members are similarly situated at the notice stage, including: (1) whether they hold the same job title; (2) whether they work or worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether they were subjected to the same policies and practices established in the same manner by the same decision-maker; and (5) the extent to which the acts constituting the alleged violations are similar. *Watson v. Surf-Frac Wellhead*

6

*Equip. Co., Inc.*, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097–99 (11th Cir. 1996)).

### III. DISCUSSION

#### A. Conditional Certification

Having reviewed Plaintiffs' Motion in light of the relevant standards and applicable factors, the Court finds that they have met their burden of demonstrating that they are similarly situated to a potential class of servers who worked for Defendants at the "uptown" location of Woodstone Pizza during a three-year period beginning June 17, 2017. The servers are similarly situated in that they all hold the same title, perform the same job duties, work in the same location, and are subject to the same policies and practices enforced by the Defendants. Further, the evidence before the Court counsels in favor of conditional certification because the servers are alleged to have suffered the same minimum-wage violations over the same period of time.

Defendants contend that the Plaintiffs have failed to present admissible evidence that other servers would be interested in opting into the class. To support their argument, Defendants point to Mr. Rorie's affidavit, in which he states that he spoke with other servers about Defendants' pay policies when he worked at Woodstone Pizza. He then claims, "Based on my experience and conversations with other servers for Defendants, I believe that at least some other servers would be interested in participating in this lawsuit" out of a possible "twenty to thirty other class members in this case."[2]  (Doc. 27-7, p. 3).

---

[2] The Court notes that the number of potential class members claimed here assumes a class that includes servers from both locations. It follows that limiting the class to the "uptown" location will likely narrow the class to under twenty members.

Mr. Baker makes essentially the same claims in his separate affidavit. *See* Doc. 27-8, p. 4.

In the Defendants' view, these representations by the Plaintiffs are insufficient to show that other servers are interested in joining a collective action. Defendants are concerned that Plaintiffs and their attorneys are simply "stirring up litigation through unwarranted solicitation." (Doc. 29, p. 5) (quotation marks and citation omitted). They claim that "even after [Plaintiffs] have spoken with others about the lawsuit without Court control or oversight, no other employees have been evidenced expressing any interest in joining this case." *Id.* This lack of interest, Defendants believe, "should be determinative to the Plaintiffs' motion." *Id.*

As the Court has previously noted, *see Harrison v. Hog Taxi, LLC, et al.*, 2019 WL 4280328, at * 4 (W.D. Ark. Sept. 10, 2019), other district courts in the Eighth Circuit and elsewhere are split as to whether plaintiffs must affirmatively demonstrate interest in joining a collective action. *See Helmert v. Butterball, LLC*, 2009 WL 5066759, at *4–*5 (E.D. Ark. Dec. 15, 2009) (collecting cases). The instant case is similar to *Hog Taxi* because of the small size of the potential class.[3]  Further, Mr. Rorie's and Mr. Baker's affidavits each contain what can best be described as a tepid claim that "at least some other servers" will be interested in joining the collective action. On the other hand, the Court is reminded that requiring a plaintiff to present more rigorous proof of actual interest by other class members is generally not appropriate, given the remedial purpose of the FLSA and the low bar that plaintiffs must chin in order to achieve conditional certification

---

[3] In *Hog Taxi*, there was one named plaintiff, and only three other individuals opted into the class.

8

at the "notice stage" of the process.  On balance, the Court finds that Plaintiffs have presented sufficient evidence of interest in a collective action to meet the low burden of proof and justify opening discovery as to both individual and class-wide claims.[4]

Defendants' second objection to conditional certification is that one of the theories supporting Plaintiffs' claim for unpaid wages is that from May to June of 2020, Defendants required all servers "to enter into a tip-pooling agreement as a condition of employment. Each Server was required to give all collected tips to management to be redistributed to other employees." (Doc. 11, pp. 6–7).  The Amended Complaint alleges that "[s]ometimes kitchen staff and/or managers were exclusively distributed tips that had been earned by servers." *Id.* at p. 7.  Defendants contend there is nothing illegal about this practice, as described, and they urge that allegations about tip-pooling "should not be included in any notice, nor should any collective action be conditionally certified on those grounds." (Doc. 29, p. 7).

The Court declines to make a summary-judgment ruling on this issue—as Defendants apparently suggest—in the context of the Court's conditional-certification analysis.  Plaintiffs have adequately pleaded their tip-pooling allegations, and those allegations were never the subject of a motion to dismiss or motion for summary judgment raised by the Defendants.  Accordingly, the claim will remain. *See Bouaphakeo v. Tyson*

---

[4] The Court cannot resist making one further comment on this topic before moving on to the next.  Because it appears likely that the number of opt-in plaintiffs in this case will be very few, Plaintiffs' counsel (to the extent they may seek an award of attorney fees if they prevail) would be well advised to carefully consider how the case is staffed and how attorney time is billed.  Without prejudging the facts in this particular case, it is generally true that a small class action will reasonably require less attorney time and resources than a larger class action.

*Foods, Inc.*, 564 F. Supp. 2d 870, 893 (N.D. Iowa 2008) (observing that during the initial "notice stage," when less information is before the court, plaintiffs need only demonstrate a "factual basis," a "colorable basis," or "substantial allegations" to show that they and potential collective-action members were subject to a company-wide decision, plan, or policy that violated the FLSA).

In view of Court's analysis above, a collective action will be conditionally certified to include the following:

**All servers employed by WSP2, LLC and Joseph Clayton Suttle, d/b/a Woodstone Pizza, at the "uptown" location of the restaurant at any time since June 17, 2017.**

### B. Notice and Consent-to-Join Forms

Once conditional certification has been granted, the Court must approve the notice to be sent to potential opt-in plaintiffs. The Court "ha[s] the discretion to manage the issuance of notice because the benefits derived from collective action dispute resolution 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Coates v. Dassault Falcon Jet Corp.*, 2017 WL 5598219, at *4 (E.D. Ark. Nov. 21, 2017) (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Here, the Proposed Notice (Doc. 27-1), Proposed Consent-to-Join (Doc. 27-2), Proposed Electronic Notice (Doc. 27-3), and Proposed Electronic Consent-to-Join (Doc. 27-4) are riddled with inconsistencies and will not be approved in their current form.[5]

---

[5] The Proposed Reminder Postcard (Doc. 27-5) does not appear to have similar errors.

10

Some of these inconsistencies have been identified by the Defendants in their brief, and the Court concurs that the following errors must be addressed.

### 1. Doc. 27-1

- The case is wrongly described as an "**Overtime wages lawsuit**," since the Amended Complaint fails to state any claims for failure to pay overtime compensation under the FLSA.

- The statement that reads, "This case has not been set for trial," is incorrect, as the case has, in fact, been set for trial to commence during the October 12, 2021, trial term.

- The following sentence from paragraph 6 does not make sense and is likely missing the words "not" and "a": "It is important to understand that you *may* be entitled to recovery just because you were employed by Defendants as server at some time since June 17, 2017."

### 2. Doc. 27-2

- The statement, "I was an hourly-paid employee for WSP2, LLC . . . ." is imprecise, as the class definition is limited to "servers," not "hourly-paid employees" generally.

### 3. Doc. 27-3

- The proposed subject line inaccurately describes this case as an "Overtime Pay Lawsuit."

- The proposed body of the email similarly describes the case as "a lawsuit for unpaid overtime wages."

11

### 4. Doc. 27-4

- The body of this electronic consent form should be identical to the
  body of the mailed consent form in Doc. 27-2.

Plaintiffs have failed to justify why a follow-up postcard (Doc. 27-5) would be necessary in this case, given the small, known number of potential class members. Therefore, the Court will not approve the mailing of a follow-up postcard. As for the other four documents, the Court is disappointed, to say the least, in Plaintiffs' counsel's carelessness and inattention to detail. There is no reason why the errors identified above could not have been corrected before now. Defendants' counsel identified these errors in a brief filed more than a week ago, and Plaintiffs' counsel filed a reply a few days later that ignored all these errors and moved the Court to "allow dissemination of notice in the form requested." (Doc. 32, p. 8).[6]

The Court directs Plaintiffs to make revisions to the four documents noted above and then email the revised documents to Defendants' counsel for comment. The parties are urged to make an effort to come to an agreement as to the form and content of the revised notice and consent-to-join forms, with the understanding that the Court is not presently sympathetic to any of Defendants' objections that were not already acknowledged above. Once counsel for the parties have conferred regarding the revised forms, Plaintiffs' counsel is directed to file a motion for approval of revised notice and consent-to-join forms by no later than **October 23, 2020**, attaching all revised forms to the motion. Plaintiffs' counsel should state in the motion whether the form and content of

---

[6] To the extent Plaintiffs ultimately prevail, under no circumstance should Plaintiffs' counsel attempt to seek recovery of attorney fees for any time associated with the drafting or correcting of their documents.

the attachments have been approved by Defendants' counsel.  If Defendants' counsel does not approve of an attachment and continues to maintain objections, those objections should be identified in the text of the motion so that the Court may consider them and then issue a ruling.  In the meantime, Defendants are **ORDERED** to provide to Plaintiffs' counsel the names and current and/or last known mailing addresses, cell phone numbers, and email addresses of all potential collective action members and to do so by no later than **October 30, 2020**.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Conditional Certification of Collective Action, for Approval and Distribution of Notice, and for Disclosure of Contact Information (Doc. 27) is **GRANTED IN PART AND DENIED IN PART** as follows:

(1)     A class defined as "**all servers employed by WSP2, LLC and Joseph Clayton Suttle, d/b/a Woodstone Pizza, at the 'uptown' location of the restaurant at any time since June 17, 2017**" is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

(2)     The Proposed Notice and Consent-to-Join forms attached to the Motion are **NOT APPROVED**.  Plaintiffs are directed to make revisions to the four documents noted above and then email the revised documents to Defendants' counsel for comment.  Plaintiffs' counsel is directed to submit a motion for approval of revised notice and consent-to-join forms by no later than **October 23, 2020**.

(3)     Defendants are **ORDERED** to provide to Plaintiffs' counsel the names and current and/or last known mailing addresses, cell phone numbers, and email

13

addresses of all potential collective action members and to do so by no later than

**October 30, 2020**.

**IT IS SO ORDERED** on this ___ day of October, 2020.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

14